**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KIZZY LANDRY and INDIA LANDRY,** | )( | **Civil Action No.: 4:17-cv-3004** |
| | )( | |
| *Plaintiffs,* | )( | |
| | )( | |
| **v.** | )( | |
| | )( | |
| **CYPRESS FAIRBANKS ISD,** *et al.,* | )( | |
| | )( | |
| *Defendants.* | )( | |

**PLAINTIFFS' RESPONSE TO:**

**DEFENDANT CYPRESS-FAIRBANK'S MOTION TO**
**DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TO THE HONORABLE KEITH P. ELLISON:**

      **NOW COME PLAINTIFFS** KIZZY LANDRY and INDIA LANDRY and respond to

DEFENDANT CYPRESS-FAIRBANK'S MOTION TO DISMISS PLAINTIFF'S SECOND

AMENDED COMPLAINT and will show the Court the following:

**NATURE AND STAGE OF THE PROCEEDING**

      Plaintiffs filed suit October 7, 2017 and amended their complaint December 11, 2017.

      Defendant Cypress-Fairbanks ISD filed a motion to dismiss plaintiffs' second amended

complaint May 15, 2018.

**STATEMENT OF THE ISSUES**

      Did plaintiffs state a viable cause of action against Defendant Cypress-Fairbanks ISD?

**OBJECTION TO FACTS ALLEGED BY DEFENDANTS**[1]

      Plaintiffs object to defendant's recitation of the facts in their motion to dismiss as it does

---

[1] Plaintiffs assert all facts as set forth in Plaintiffs' 1st Amended Original Complaint.

not contain all the relevant facts for analysis of the motion to dismiss and plaintiffs instead point to the facts contained in their live complaint (supra).

## SIMILIAR CASE PENDING IN THE U.S. SOUTHERN DISTRICT OF TEXAS

There is currently pending in this district[2] a similar case alleging a female African-American Houston-area high school student was punished and harassed for respectfully sitting for the Pledge. In that case defendant Superintendent's, principal's and teachers' motion to dismiss was denied in part. See **Exhibit 1,** *Memorandum and Order*, May 22, 2018.

## FACTS

Defendant Cypress-Fairbanks ISD leaves out many facts essential to the analysis. Plaintiffs do not agree with defendant's assertion of facts in it's motion to dismiss unless such facts agree exactly with plaintiffs' live complaint facts and reasonable inferences. Plaintiffs have set forth the relevant facts in their live complaint (**Exhibit 2** incorporated by refence as is fully set forth herein):

*1.       India Landry, an African-American female, at the time 17 (now 18), a Windfern High School (Windfern) student had respectfully sat for the Pledge of Allegiance (the Pledge) around 200 times in previous schools in the Cypress-Fairbanks Independent School District. At Windfern, however, it was different.*
*2.       During the Spring Semester of 2017 India was told to leave the class on five separate occasions by English Teacher Jamie Johnson because she sat for the Pledge of Allegiance (The Pledge).*
*3.       Also, during the Spring Semester of 2017 India's Street Law teacher Mary James berated her for sitting for the Pledge and that it was disrespectful to this country. The next day Mary James expelled India from the classroom for sitting respectfully for the Pledge and sent her to Head Principal Martha Strother's office (Principal Strother). Another African America student ("D") was also sent to office for sitting for the Pledge along with India.*
*4.       At the office Principal Strother told both India and D that they would have to stand for the Pledge.*
*5.       In the Fall Semester 2018 India was sitting in head Principal Strother's office when the Pledge was recited over the school intercom. India continued to sit. Principal Strother upon seeing this immediately expelled India from school saying "Well you're kicked outta here." Assistant Principal Fitt then gave Kizzy Landry, India's mother, five minutes to pick up India or the police would escort her out of the school which was heard by India Landry as was intended by Assistant Principal*

---

[2] Honorable Lee H. Rosenthal.

*Fitt. Assistant Principal Fitt did not instruct Principal Strother that expelling India for peacefully sitting for the Pledge was Unconstitutional*

6.      *The right for minor students not to be forced to recite or stand for the Pledge is an old one predating, for example, Brown v. Board of Education by over a decade. West Virginia Bd. of Ed. v. Barnette, 319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) (We think the action of the local authorities in compelling the flag salute and pledge transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.) See also Frazier v. Winn, 535 F.3d 1279 (11th Cir. 2008). The plaintiff seeks appropriate declaratory and injunctive relief, as well as damages. Furthermore, instant expulsion from a public school is not allowed if the student is not a danger. Goss v. Lopez, 419 U.S. 565 (1975).*

*...*

## IV.      *ADDITIONAL FACTS*

7.      *India Landry (India) was a student at Windfern High School of the Cypress Fairbanks ISD. Kizzy Landry (Ms. Landry) is the mother of India Landry. Windfern is a public school receiving state and federal funds. Cypress-Fairbanks ISD has designated Windfern a "Campus of Choice" and allowed special behavior requirements.[3] According to Windfern's website: "Windfern High School, CFISD's "campus of choice," serves eleventh and twelfth graders who choose to apply for admission from the ten traditional attendance zone high schools. Students must be recommended by their home campus assistant principal and counselor and must write a statement of why they want to attend Windfern and what they are willing to do to ensure their success. Applying to Windfern is much like applying to a college: students make a deliberate choice to apply for admission and the college chooses which students to accept for admission. Furthermore, if students do not live up to the academic and behavior standards of the college, they can be withdrawn. This admissions process defines the difference between a campus of choice and an attendance zone campus which has open enrollment for all students living in the area designated by the district as its attendance zone."*

8.       *India Landry, an African-American female, at the time 17 (now 18), a Windfern High School (Windfern) student had respectfully sat for the Pledge of Allegiance (the Pledge) around 200 times in previous schools in the Cypress-Fairbanks Independent School District. At Windfern, however, it was different.*

9.      *During the Spring Semester of 2017 India was told to leave the class on five separate occasions by English Teacher Jamie Johnson because she sat for the Pledge of Allegiance (The Pledge).*

10.      *Also, during the Spring Semester of 2017 India's Street Law teacher expelled her from the classroom for sitting respectfully for the Pledge and sent her to Head Principal Martha Strother's office (Principal Strother). Another African America student ("D") was also sent to office for sitting for the Pledge along with India.*

11.      *At the office Principal Strother told both India and D that they would have*

---

[3] Plaintiffs allege one of these behavioral requirements promoted by Cy-Fair ISD is standing for the Pledge. *Note-the preceding footnote is in the live complaint.*

to stand for the Pledge.

12.     In the Fall Semester 2018 India was sitting in head Principal Strother's office when the Pledge was recited over the school intercom. India continued to sit. Principal Strother upon seeing this immediately expelled India from school saying "Well you're kicked outta here." Assistant Principal Fitt then gave Kizzy Landry, India's mother, five minutes to pick up India or the police would escort her out of the school.

13.      October 2, 2017, India happened, however, to be sitting in head principal Martha Strother's office, with school secretary Mrs. Walter's present, at 9:30 am when the pledge was recited over the school intercom. India continued to sit. Principal Strother upon seeing this immediately expelled India from school saying angerly "Well you're kicked outta here." After sitting for a few minutes India was directed to Assistant Principal Fitt's office. Principal Penny Irwin-Fitt told India in a hostile tone to call her mother to come pick her up and if your mom does not get her in five minutes an officer will escort her from the building. Mrs. Walters said in a hostile manner, "This is not the NFL."[4] Ms. Fitt said India was going to stand for the Pledge like the other African-American in her class.

14.     Ms. Landry got a phone call from India to pick her up as she was being expelled from school. Ms. Landry arrive at Windfern at about 10 am and tried to talk to the Principal Strother to determine the reason for the pulsion but Principal Strother would not see Ms. Landry. The secretary said to sign I.L. out of school.

15.     After Ms. Landry got home she phoned at 10:45 am to Cypress-Fairbanks ISD Superintendent Mark Henry.[5] Ms. Landry explained the entire situation as a message with the Cypress-Fairbanks ISD receptionist and the receptionist said someone would call Ms. Landry that day or the latest the morning of October 3, 2017.

16.     The next day October 3, 2017 Ms. Landry again called the Cypress-Fairbanks ISD Superintendent Henry and told the receptionist no one had called as promised and repeated the incident facts. The ISD receptionist stated she had forwarded Ms. Landry's message by email and said she would forward the message again by email to Cypress Fairbanks ISD Superintendent Henry. About 8 am Ms. Landry called Cypress Spring High School and spoke Assistant Principal Smith to see if India could return to Cypress Spring High School. Ms. Landry and India then went to Mr. Smith's office. Principal Smith phoned Principal Strother and then he reported to Ms. Landry that no one can sit for the Pledge at her school and India cannot come back. Later that evening around 7 or 8 pm Mr. Campbell an assistant to Cypress Fairbanks ISD Superintendent Henry in student services phoned. Mr. Campbell indicated he would contact Principal Strother that night or in the morning.

---

[4] This refers to the mostly African American NFL players kneeling during the National Anthem in protest of the discriminatory treatment of African Americans that exists in America. *Note-the preceding footnote is in the live complaint.*

[5] Superintendent Mark Henry is charged with overseeing school operations and to keep the school board apprised of important developments. Martha Strother was designated authority to handle student behavior at Windfern.  *Note-the preceding footnote is in the live complaint.*

*17.    October 4, 2017 in the afternoon Mr. Campbell affirmed he had spoken with Principal Strother and that Principal Strother should be calling Ms. Landry that day. Ms. Landry received no phone call. Principal Strother called in the evening and asked to meet you regarding the possibilities of India returning to Windfern. A meeting time was set up for October 5, 2017 at 8:30 am.*

*18.    October 5, 2017 at 8:30 am Ms. Landry and India met with Principal Strother. Principal iterated that India must stand for the Pledge to be let back in at Windfern. Principal Strother said that sitting was disrespectful and would not be allowed. Principal Strother suggested that India write about justice and African Americans being killed. Ms. Strother then said the meeting is over and if India does not stand for the Pledge she cannot return to Windfern.*

*19.    Throughout this ordeal Principal Strother stated that Windfern is a "school of choice" and that is why*

*20.    At about 10 am Ms. Landry got a call from a local TV news reporter from KHOU Channel 11 about the "pledge controversy." At 5 pm that afternoon a story aired on KHOU Channel 13 News about the situation including suggesting it was Unconstitutional.*

*21.    October 6, 2017 at about 8:41 am Principal Strother called and said now India could sit for the Pledge. India returned to Windfern at 10:30 am. Principal Strother still has her job at Windfern High School.*

*22.    The Cy-Fair ISD Handbook States that the:*

*Pledge of Allegiance and a Minute of Silence Texas law requires (Texas Education Law Section 25.082) students to recite the Pledge of Allegiance to the United States flag and the Pledge of Allegiance to the Texas flag each day. Parents may submit a written request to the principal to excuse their child from reciting a pledge.*

*The Texas Education Code Section 25.082 sets forth that:*

*...*
*(b)  The board of trustees of each school district and the governing board of each open-enrollment charter school shall require students, once during each school day at each campus, to recite:*
*(1)  the pledge of allegiance to the United States flag in accordance with 4 U.S.C. Section 4;  and*
*(2)  the pledge of allegiance to the state flag in accordance with Subchapter C, Chapter 3100, Government Code.*
*(b-1)  The board of trustees of each school district and the governing board of each open-enrollment charter school shall require that the United States and Texas flags be prominently displayed in accordance with 4 U.S.C. Sections 5 - 10 and Chapter 3100, Government Code, in each campus classroom to which a student is assigned at the time the pledges of allegiance to those flags are recited.*

*36.    After India returned to class several Windfern High School teachers would not let her makeup her assignments causing a reduction in her grades.*

*37.    India and Ms. Landry suffered at least anxiety, depression, and fear as a result of Defendants' action and inactions. Ms. Landry had to use her vehicle and time away from work due to Defendants' actions and inactions.*

--Plaintiff's 2nd Amended Original Complaint

## PLAINTIFF'S REQUEST FOR ORAL ARGUMENT

Although Plaintiffs aver that plaintiffs' response to the defendant Strother's partial motion to dismiss is sufficient to defeat the motion, questions and clarifications may remain and, therefore, plaintiffs suggest oral argument.

## FORCED STANDING FOR THE PLEDGE

The Supreme Court decided 75 years ago that public school students cannot be forced to stand for the Pledge of Allegiance.[6] That's over a decade older than *Brown v. Board of Education*. No case since then has held otherwise.

## CY-FAIR ISD HAD A CUSTOM AND PRACTICE TO ALLOW
## WINDFERN HIGH SCHOOL TO BE RUN BY POLICYMAKER STROTHER

Cy-Fair ISD delegated Principal Strother to set behavior at Windfern, a school which accepted students from throughout Cypress-Fairbanks ISD. As such she was a delegated policymaker for Cypress-Fairbanks ISD. See Plaintiff's live complaint, paragraph 7 (supra). Therefore, when Principal Strother punished and expelled India she was acting in her delegated policymaking authority to require students at Windfern to stand for the Pledge. Around 5 months prior to the expulsion Principal Strother had told India and another African-American student they must stand for the Pledge. This was not a one-day lapse of judgment.

## CUSTOM AND PRACTICE IS FURTHER ADVANCED BY THE NUMBER
## AND TIMES INDIA WAS PUNISHED FOR STANDING FOR THE PLEDGE

---

[6] *West Virginia Bd. of Ed. v. Barnette,* 319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) (We think the action of the local authorities in compelling the flag salute and pledge transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control (emph. added).) See also *Frazier v. Winn, 535 F.3d 1279 (11th Cir. 2008).*

Not only did Principal Strother require standing for the Pledge so did teacher Jamie Johnson who kicked India out of class five times for not standing, another teacher sent India to Principal Strother's office when she would not stand for the Pledge, **assistant Principal Fitt said India was going to stand for the Pledge like the other African-American in her class and gave Kizzy Landry five minutes to pick up India or the police would escort her out of the school for not standing for the Pledge, Mrs. Walters said in a hostile manner, "This is not the NFL" to India, and then Cy-Fair ISD Superintendent Henry ignored Kizzy Landry's several pleas to let India back in school despite knowing she was expelled for sitting for the Pledge.**

Defendants hope the Court will disregard facts or assume facts in their favor. Defendant Martha Strother and many others stated, over and over, that India must stand for the <u>pledge and that an excuse (opt out) in writing would not make any difference</u>.[7]

> October 5, 2017 at 8:30 am Ms. Landry and India met with Principal Strother. Principal iterated that India must stand for the Pledge to be let back in at Windfern. Principal Strother said that sitting was disrespectful and would not be allowed. Principal Strother suggested that India write about justice and African Americans being killed.
> -live complaint at paragraph 18.

> This policy and actions of Strother is iterated by Principal Smith:

> About 8 am Ms. Landry called Cypress Spring High School and spoke Assistant Principal Smith to see if India could return to Cypress Spring High School. Ms. Landry and India then went to Mr. Smith's office. <u>Principal Smith phoned Principal Strother and then he reported to Ms. Landry that no one can sit for the Pledge at her school and India cannot come back.</u>
> -live complaint at paragraph 16.

> As further proof that defendants were not concerned with the issue of a written excuse:

> October 6, 2017 at about 8:41 am Principal Strother called and said now India could sit for the Pledge. India returned to Windfern at 10:30 am. Principal Strother still has her job at Windfern High School.
> -live complaint at paragraph 16.

---

[7] If this is not clear in the live complaint plaintiffs request to amend. If Martha Strother is saying that is not what she meant then that is fact issue for a jury.

It is clear from number of and positions of the defendants there was a custom and policy of requiring students to stand for the Pledge at Windfern.

It is svery important to note at this pleading stage that Superintendant Henry was in agreement that standing for the Pledge was Cy-Fair ISD policy as he did not contact Principal Strother and inform her that it was not the policy. His failure to change the status quo is indicative of a policy at Cy-Fair ISD that Windfern students stand for the Pledge.

## DEFENDANTS' REPLIES DISREGARDS THE RACIAL BIAS:TITLE VI

There appears to racial bias at Windfern affecting African American students as Mrs. Walters said, "This is not the NFL." Also, Ms. Fitt said India was going to stand for the Pledge like the other African-American in her class.

## MONELL CUSTOM/RATIFICATION

Clearly there was a custom, perhaps short-lived, at the Cy-Fair ISD that students sent to Windfern School from other schools have to stand for the Pledge. This was stated by no less than the Head Principal Strother, Assistant Principal Fitt, Assistant Principal Brown and Secretary Walters. See above. Furthermore, when Kizzy brought the expulsion and forced standing for the Pledge to the attention of Cy-Fair Superintendant Mark Henry on October 2 and 3, 2018 he felt it unnecessary to do anything about it and expressed no concern whatsoever-more indictaion that forced Pledge standing was in-line with Cy-Fair policy and custom at the Windfern School.

Additionally, the Cy-Fair ISD School Board no doubt became aware of plaintiffs' situation through the KHOU Channel 11 newstory which was aired October 6, 2017 yet did nothing to discipline anyone concened. See live complaint at paragraph 20. Subsequent stories appeared nationwide in the New Yorks Times and throughout the United States. See **Exhibit 1.** Despite certainly knowing of Windfern's outrageous behavior the Cy-Fair ISD did not discipline anyone

involved thereby constituting ratification of the actions of forced standing for the Pledge either alone or in conjunction with the other facts. *Hobart v. City of Stafford*, 916 F.Supp.2d 783, 794-99 (S.D. Tex. 2013) ("Fifth Circuit case law is, at times, less than clear about whether ratification is a truly independent theory of municipal liability, as *City of St. Louis v. Praprotnik* (485 U.S. 112 (1988)) suggests, or whether ratification is simply indicative of a pre-existing policy or custom, as *Grandstaff v. City of Borger (*767 F.2d 161 (5th Cir.1985)), suggests. See also *German v. Roberts*, No. C15-5237 BHS-DWC, 2017 WL 3407052, at *3-4 (W.D. Wash. Aug. 9, 2017)("[L]ower courts appear to be divided on whether an internal police investigation that concludes that a shooting by its officers was lawful and within the municipality's policies is alone sufficient to support a theory of ratification for the purposes of *Monell* liability. For instance, another judge in our district has recently found that such circumstances create a question of fact regarding ratification that should be resolved by a jury. . . On the other hand, other courts have concluded that such an investigation and conclusion will not constitute ratification on their own absent evidence of 'something more,' such as a 'sham investigation' or 'conduct so outrageous that a reasonable administrator should have known that he or she should do something about it.' *See Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191–92 (D. Haw. 2003).

In *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), a majority of the Court held that a single decision by an official with policymaking authority in a given area could constitute official policy and be attributed to the government itself under certain circumstances. Thus, in *Pembaur* the County could be held liable for a single decision by a County prosecutor which authorized an unconstitutional entry into the plaintiff's clinic. See, e.g., *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.,* 543 F.3d 221, 227 (5th Cir. 2008) ("As to this Sheriff's policy role in the liability analysis, this Circuit has already held

'Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties.' Determining which bonding companies were authorized to write bonds at the Tunica County jail logically is part of that law enforcement authority. The Sheriff's decision to deny the Plaintiffs the right to issue bonds is the kind of single decision by the relevant policymaker that can be the basis of liability."); *Welch v. Ciampa,* 542 F.3d 927, 942 (1st Cir. 2008) ("We are bound by Pembaur and conclude that a single decision by a final policymaker can result in municipal liability. Here, the parties agree that Ciampa, as Chief of Police, is the final policymaking official with respect to the reappointment of specialists. Accepting the parties' representations as true, liability can be imposed on the Town for Ciampa's decision not to reappoint Welch if that decision violated Welch's constitutional rights. Hence, summary judgment for the Town must be reversed."); *Bruce v. Beary*, 498 F.3d 1232, 1249 (11th Cir. 2007) ("With respect to the failure to return Bruce's property to him after appeal, despite the state court order to do so, we emphasize that even a single decision by its policymaker may subject the county to liability for a constitutional violation. . . As the final decision-maker in the Sheriff's Department, . . . the Sheriff had the responsibility to see that Bruce's property was returned − all of it. As such, the district court erroneously held that Bruce is required to demonstrate that the Sheriff had some policy of retention in order to establish a constitutional violation."); *Brooks v. Rothe,* 2007 WL 3203761, at *7 (E.D. Mich. Oct. 31, 2007) ("Here, the uncontested facts show that final decision makers, the chief of police and the county prosecutor, Defendants Bodis and Gaertner, reached a decision and then directed its execution. Based on the police report, Defendant Bodis consulted with Defendant Gaertner, who advised that Defendant Rothe enter the shelter and arrest Plaintiff. Consequently,

under *Pembaur*, Defendants city and county can be held liable for the consequences of their decision makers' directive. Thus, the claim against Defendant city and Defendant county remains.").

### CY-FAIR HAD AN OFFICIAL WRITTEN UNCONSTITUTIONAL POLICY

Defendant Cypress written policy was Unconstitutional as it allowed for India to disciplined for sitting peacefully for the Pledge.[8] See Plaintiffs' 1 st Amended Original Complaint, paragraph 21 (supra). See *Jauch v. Choctaw Cty.,* 874 F.3d 425, 435-36 (5th Cir. 2017) ("*Jauch* challenges the indefinite detention procedure. Accordingly, the first and second elements of our inquiry reduce to one question: Is the challenged procedure 'an official policy' that was 'promulgated by the municipal policymaker?'. . . It is. There is no dispute that Sheriff Halford is the relevant policymaker. . . And, both prior to and during this litigation, Sheriff Halford and Choctaw County have cleaved to the indefinite detention procedure. Their position is that indefinite detention is and must be the policy in Choctaw County. Accordingly, resolution of the first and second elements is as clear as ever it could be. . . It is also obvious that the indefinite detention procedure caused the due process violation Jauch complains of—indefinite detention. 'Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so,' the causation determination 'is straightforward.'. . The policy *Jauch* challenges cannot be separated from the procedure that we have found constitutionally deficient. They are and the same. In cases like this one, where 'fault and causation' are 'obvious,' 'proof that the municipality's decision was

---

[8] *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) (We think the action of the local authorities in compelling the flag salute and pledge transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.) See also *Frazier v. Winn*, 535 F.3d 1279 (11th Cir. 2008). The plaintiff seeks appropriate declaratory and injunctive relief, as well as damages. Furthermore, instant expulsion from a public school is not allowed if the student is not a danger. *Goss v. Lopez*, 419 U.S. 565 (1975).

unconstitutional' establishes 'that the municipality itself was liable for the plaintiff's constitutional injury.'. . While courts must be careful not to 'blur[ ] the distinction between § 1983 cases that present no difficult questions of fault and causation and those that do,'. . . we have no trouble concluding that this is an obvious case. Choctaw County's relevant policymaker instituted a policy whereby certain arrestees were indefinitely detained without access to courts or the benefit of basic constitutional rights. This unconstitutional policy was 'the moving force' behind Jauch's constitutional injury. . . Under *Monell* and its progeny, Choctaw County is liable."); See also *Maddux v. Officer One,* No. 01-20881, 2004 WL 436000, at *19 (5th Cir. Mar. 9, 2004) (unpublished) ("The written policy condoned forcible entry of a third-party premises despite the absence of the Steagald exceptions, and certain testimony in the record causes us to question whether the City in practice went any further in protecting the privacy interests of third parties caught in the melee."); *Mercado v. Dallas Cty., Texas*, 229 F.Supp.3d 501, 521 (N.D. Tex. 2017) ("In support of their 'over detention' claim, plaintiffs allege that Dallas County had a policy and practice of detaining individuals with immigration holds who have otherwise been cleared for release, without requiring probable cause to believe that a different criminal offense has been or is being committed or other authority that would satisfy the Fourth Amendment, and that this policy was the 'moving force' for plaintiffs' § 1983 claim. …These allegations are sufficient at the Rule 12(b)(6) stage to plausibly allege the elements for municipal liability.")

The preceding cases support liability of defendant Cypress Fairbanks in Plaintiffs' case. Principal Strother is in charge of the student discipline and the due process in the student disciplinary actions yet Strother instantly kicked India out of school for sitting for the Pledge without notice or an opportunity to be heard, a constitution right established in 1943, during World War II no less. The school board is not in charge of student discipline. Principal Strother is Cypress

Fairbank's policymaker in regards to when a student is removed from class. Additionally, Superintendent Mark Henry was made aware of the situation on two separate occasions, days before India was let back in school, yet he did not instruct Principal Strother that India could be let back into school and that she could respectfully sit for the Pledge. Neither did he insure Constitutional due process in the expulsion of India from school. Plaintiffs plan to add Superintendent Mark Henry to the lawsuit for failure to intervene. "[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). And "the fact that the police officers were from different law enforcement agencies does not as a matter of law relieve [an officer] from liability for a failure to intervene.*" Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013) (internal quotations omitted). In the Fifth Circuit, failure to intervene falls "under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal quotations omitted). Superintendent Henry was informed at least twice of India being kicked out of school instantly without any due process for standing for the Pledge but did nothing. See also *Kitchen v. Dallas County, Tex*., 759 F.3d 468, 481 (5th Cir. 2014) (In the absence of any contrary authority, ... we ... conclude that where a detention officer knows that a fellow officer is committing a constitutional violation, has a reasonable opportunity to prevent the harm, and yet chooses not to act, ... bystander liability may attach regardless of whether the directly responsible officer can be specifically identified.")(*Hamilton v. Kindred,* 845 F.3d 659, 663 (5th Cir. 2017) (clearly established at least since 2013 and perhaps since 2005 that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had

a reasonable opportunity to prevent the harm) "[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."

## IT VIOLATES DUE PROCESS TO BE KICKED OUT OF SCHOOL

India Landry was instantly expelled from school with no notice or an opportunity to be heard. The right not to be instantly expelled from public school is 43 years old. *Goss v. Lopez*, 419 U.S. 565 (1975)("The Court's view has been that as long as a property deprivation is not de minimis, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause."). The instant case involved expulsion while the *Goss* case plaintiff suffered a mere suspension.

While the Goss Court held due process was necessary in suspensions of 10 days or more, it did not hold, that suspensions of less than 10 day did not require due process.

> "On the other hand, requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action. At least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect. He may then determine himself to summon the accuser, permit cross-examination, and allow the student to present his own witnesses. In more difficult cases, he may permit counsel. In any event, his discretion will be more informed and we think the risk of error substantially reduced. We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days.
> …
> Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required."
> *Id at 583-4*

In cases of suspensions of less than 10 days *Harris v. Pontotoc Cty. Sch. Dist*. (635 F.3d 685, 690 (5th Cir. 2011)) is instructional:

> Because Derek was subject to a temporary suspension of no more than 10 days, he had to "be given oral or written notice of the charges against him and, if he denies

them, <u>an explanation of the evidence the authorities have and an opportunity to present his side of the story</u>." *Goss,* 419 U.S. at 581. "[I]n being given an opportunity to explain his version of the facts at this discussion, the student [must] first be told what he is accused of doing and what the basis of the accusation is." Id. at 582. There is no particular delay or formality required, but there must be at least "an informal give-and-take between student and disciplinarian." Id. at 582, 584.

India was instantly expelled before there was any opportunity to present her side of the story.

## **EQUAL PROTECTION**

Plaintiffs have an equal amendment claim. Defendant do not dispute this. "[B"ecause the substantive guarantees of the [First] Amendment serve as the strongest protection against the limitation of these rights. . . . . [If the defendants' actions] survive substantive review under the specific guarantees [of the First Amendment,] they are also likely to be upheld under an equal protection analysis. . . ."  *A.M. ex rel. McAllum v. Cash,* 585 F.3d 214, 226 n.9 (5th Cir. 2009). Here defendants do not even bother with arguing that the First Amendment does not apply.

## <u>KIZZY LANDRY HAS STANDING</u>

Kizzy Landry is the mother of India Landry, a minor at the time, and suffered at least anxiety, depression, and fear as a result of Defendants' actions. Ms. Landry had to use her vehicle and time away from work due to Defendants' actions and inactions. Ms. Landry has standing for her own damages suffered by defendants' actions.

## <u>CONCLUSION and PRAYER</u>

WHEREFORE, Plaintiffs request that defendant's motion to dismiss be DENIED and request all other relief in Law and/or Equity that plaintiffs show themselves entitled.

Respectfully submitted,
KALLINEN LAW PLLC

/s/ Randall L. Kallinen

Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:     713.320.3785
FAX:             713.893.6737
Email:           AttorneyKallinen@aol.com
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have served upon all opposing counsel and all pro se parties a true and correct copy of the foregoing on this the 13th day of June 2017, by filing with the ECF System of the United States District Court for the Southern District of Texas.

/s/ Randall L. Kallinen
Randall L. Kallinen