UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIZZY LANDRY and INDIA LANDRY, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-3004 |
| | § | |
| CYPRESS FAIRBANKS ISD, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM & ORDER

This case concerns a high school student's choice not to stand for the Pledge of Allegiance and her subsequent treatment by school administrators and the school district. Pending before the Court are several motions to dismiss: Defendant Martha Strother's Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint ("Strother's Motion") (Doc. No. 28); Defendant Cypress Fairbanks ISD's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Cy Fair ISD's Motion") (Doc. No. 29); Defendant Mark Henry's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Henry's Motion") (Doc. No. 33); and Defendants Jamie Johnson, Mary James, Penny Irwin-Fitt, and Secretary Walters' Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint ("Johnson's Motion") (Doc. No. 34).

### I. FACTUAL BACKGROUND

The following is a summary of the facts alleged in Plaintiffs' Second Amended Complaint. (Doc. No. 24.)

India Landry is an African American student who attended Windfern High School ("Windfern") in the Cypress Fairbanks Independent School District ("Cy Fair ISD"). (*Id*. at ¶ 1.) She was 17 years old at the time the events at issue began, and she is now 18 years old. (*Id*.)

Windfern is a "Campus of Choice," which Cy Fair ISD students may attend upon application and the recommendation of the home campus assistant principal and counselor. (*Id.* at ¶ 20.) At other schools in Cy Fair ISD, India had sat for the Pledge of Allegiance (the "Pledge") "around 200 times." (*Id.* at ¶ 21.)

During the spring of 2017, India's English teacher, Jamie Johnson, told her to leave the classroom on five separate occasions because she sat for the Pledge. (*Id.* at ¶ 22.) Also that spring, India's Street Law teacher, Mary James, told India that it was disrespectful to this country to sit for the Pledge. (*Id.* at ¶ 3.) The day after Ms. James admonished India for sitting for the Pledge, Ms. James sent India and another African American student to Principal Martha Strother's office because they were sitting for the Pledge. (*Id.*) Principal Strother is the designated authority to handle student behavior at Windfern. (*Id.* at ¶ 28 n.3.) Principal Strother told the two students they had to stand for the Pledge. (*Id.* at ¶ 4.)

On October 2, 2017, India was in Principal Strother's office when the Pledge was recited. (*Id.* at ¶ 26.) India remained seated. (*Id.*) In response, Principal Strother "immediately expelled India from school" by saying, "Well you're kicked outta here." (*Id.*) Assistant Principal Penny Irwin-Fitt called India's mother, Kizzy Landry, and gave her five minutes to pick up India or the police would escort India from school. (*Id.*) While India waited, administrators made hostile remarks to her. (*Id.*) Ms. Fitt said India would stand for the Pledge like the other African American student in her class. (*Id.*) The secretary, Karen Walters, said, "This is not the NFL." (*Id.*)

When Kizzy Landry arrived, Principal Strother refused to see or talk to her. (*Id.* at ¶ 27.) Kizzy Landry then made numerous attempts to speak with the Cy Fair ISD Superintendent Mark Henry, as well as Principal Strother, by phone. (*Id.* at ¶¶ 28-29.) Superintendent Henry is

charged with overseeing school operations and keeping the school board informed. (*Id*. at ¶ 28 n.3.) At one point, another assistant principal relayed a message from Principal Strother to Kizzy Landry: no one could sit for the Pledge and India could not return to school. (*Id*. at ¶ 29.)

On October 5, 2017, India and Kizzy Landry met with Principal Strother. (*Id*. at ¶ 31.) Principal Strother stated that sitting was disrespectful and would not be allowed, and that India must stand for the Pledge to be permitted to return to Windfern. (*Id*.) Principal Strother suggested that, instead of sitting, India could write about justice and African Americans being killed. (*Id*.)

On October 6, 2017, Principal Strother changed her position; India returned to Windfern that day and was allowed to sit for the Pledge. (*Id*. at ¶ 34.) Several of India's teachers did not allow her to make up assignments she had missed in her four-day absence, and India's grades suffered. (*Id*. at ¶ 36.)

> Regarding the Pledge, the Cy Fair ISD handbook states:
>
> Pledge of Allegiance and a Minute of Silence Texas law requires (Texas Education Law Section 25.082) students to recite the Pledge of Allegiance to the United States flag and the Pledge of Allegiance to the Texas flag each day. Parents may submit a written request to the principal to excuse their child from reciting a pledge.

(*Id*. at ¶ 35.)

Together, India and Kizzy Landry brought claims against Cy Fair ISD, Principal Strother, Superintendent Henry, Ms. Johnson, Ms. James, Ms. Fitt, and Ms. Walters for violations of India's First Amendment speech rights; India's Fifth Amendment and Fourteenth Amendment due process rights; India's Fourteenth Amendment equal protection rights; and India's 42 U.S.C.

§ 1985 and Title VI of the Civil Rights Act of 1964 anti-discrimination rights.[1] India and Kizzy Landry also ask the Court to declare Texas Education Code § 25.082 ("Texas Pledge Statute"), or the parts requiring standing and reciting of the Pledge, unconstitutional. All Defendants move to dismiss Kizzy Landry from the suit for lack of individual standing. All Defendants also move to dismiss India's Fifth Amendment claim for lack of applicability to local governmental entities or employees, and India's Title VI claim. Defendants Cy Fair ISD, Superintendent Henry, Johnson, James, Fitt, and Walters also move to dismiss India's § 1985 claim. Further, Defendant Cy Fair ISD moves to dismiss India's First Amendment claim, Fourteenth Amendment due process claim, equal protection claim, and constitutional challenge to the Texas Pledge Statute, and Defendant Superintendent Henry individually moves to dismiss India's Fourteenth Amendment claim on the basis of qualified immunity.

## II.  LEGAL STANDARDS

When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

---

[1] The Second Amended Complaint does not explicitly delineate which Defendants each claim is brought against. Throughout this Memorandum & Order the Court clarifies which Defendants each claim is brought against based on the facts alleged, and which Defendants each claim may proceed against based on the sufficiency of the allegations.

4

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must contain sufficient factual matter that, if accepted as true, the complaint would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678 (citation omitted). The court should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). The court should not evaluate the merits of the allegations, but must satisfy itself only that plaintiff has adequately pled a legally-cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### III. ANALYSIS

#### a. Standing

A court lacks subject matter jurisdiction where there is no Article III case or controversy. A necessary component of a case or controversy is standing. The three prerequisites for standing are: (1) the plaintiffs have suffered an "injury in fact"—an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between that injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A person who claims a deprivation of constitutional rights must "prove some violation of their personal rights." *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986). In *Coon*, the Fifth Circuit distinguished between two relatives of a man who was shot by a sheriff's deputy: the relative who proved personal loss—she had been in the trailer at which the deputy fired a round of heavy buckshot—had standing to sue for civil rights violations, but the relative who was not directly involved in the shooting did not. *Id.* at 1161.

A parent may pursue claims for the violations of her minor child's constitutional rights in her capacity as a guardian, but not as an individual. *See C.H. ex rel. Z.H. v. Oliva*, 990 F. Supp. 341, 349 (D. N.J. 1997), *aff'd in part, vacated in part on other grounds* 226 F.3d 198 (3d Cir. 2000) (an elementary school student and his mother alleged that the school violated the First Amendment by taking down a child's religious artwork). However, courts have found that injuries to a parent resulting from violations of her child's constitutional rights are not

sufficiently personal for the purposes of the parent's individual standing. *Delbridge v. Whitaker*, No. 2010 WL 1904456, at *3 (D. N.J. May 10, 2010) (citing *Hannah v. City of Dover,* 152 F. App'x 114, 116–17 (3d Cir. 2005)).

The Second Amended Complaint alleges violations of India's constitutional rights, not her mother's. India is a named plaintiff and she is not a minor. Her mother, Kizzy Landry, does not have standing to bring claims for violations of the First Amendment, Fifth Amendment, Fourteenth Amendment, 42 U.S.C. § 1985, and Title VI.

A parent may have standing to challenge the constitutionality of statutes concerning public schools. For example, parents and students could challenge the practice of oral prayer in their schools as a violation of the establishment clause. *Croft v. Perry*, 625 F.3d 157 (5th Cir. 2010) (minor children and their parents were able to proceed with an establishment clause challenge to the Texas Pledge Statute); *Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F.Supp. 2d 735 (5th Cir. 2007) (parents of graduating students had standing to challenge a school district's policy of allowing graduating classes to vote on whether to have students say a prayer at the high school commencement ceremony); *Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001) ("The case for standing is made stronger when the plaintiffs are students and parents of students attending public schools, who enjoy a cluster of rights vis-a-vis their schools, and thus are not merely concerned bystanders."); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 292 n.25 (5th Cir. 2001) (parents had standing to challenge a policy that required them to fill out a questionnaire before their child could opt out of a uniform policy on religious grounds). Additionally, the Texas Pledge Statue explicitly involves parents. Tex. Educ. Code § 25.082(c) ("On written request from a student's parent or guardian, a school district or open-enrollment charter school shall excuse the student from reciting a pledge of allegiance").

Kizzy Landry has standing to challenge the Texas Pledge Statute.

### b. Municipal Liability

A school district cannot be sued for constitutional violations "inflicted solely by its employees or agents." *Monell v. City of New York*, 436 U.S. 658, 694 (1978). Instead, for municipal liability, the alleged violation must be attributed to the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.*; *see also Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905, 908 (5th Cir. 1991). "[A] plaintiff [must] show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Under Texas law, the final policy-making authority for an independent school district rests with the school district's board of trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (superintendent did not have final policymaking authority in area of employee transfers which would subject the district to liability). *Jett* reached the conclusion that the superintendent did not have final policymaking authority only after a consideration of the evidence and a factual inquiry into the specific circumstances. A district may delegate policymaking authority. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (stating that individuals to whom authority is delegated are municipal policymakers); *see also Texas State Teachers Ass'n v. Mesquite Indep. Sch. Dist.*, 2001 WL 1029514, at *4 (N.D. Tex. Aug. 23, 2001) ("[t]he holding in *Jett* does not preclude a determination that [the superintendent] was the policymaking authority with respect to the specific decision of which [plaintiff] complains").

Plaintiffs challenge Defendant Cy Fair ISD's custom of ignoring the parental permission provision of its written Pledge policy and refusing to allow any student—and specifically any

African American student—to sit for the Pledge at Windfern.[2] Plaintiffs' allegations support an inference that Defendant Cy Fair ISD had an unwritten custom or practice of requiring students to stand during the Pledge at Windfern and disciplining those who refused. Several facts demonstrate this custom: (1) the five separate occasions that Defendant Johnson made India leave her English classroom for sitting during the Pledge; (2) Defendant James' admonition to India that it is disrespectful to sit for the Pledge; (3) Defendant James requiring India and another African American student to leave her Street Law classroom because they were sitting during the Pledge; (4) Defendant Principal Strother kicking India out of school after witnessing her sitting during the Pledge; (5) Defendant Principal Strother repeatedly telling India, both before and after she kicked India out of school, that she had to stand for the Pledge; (6) Defendant Fitt saying that India had to stand for the Pledge; and (7) Defendant Walters saying, "[t]his is not the NFL," insinuating that India could not protest the Pledge the way that football players protest during the national anthem. (Doc. No. 24 at ¶ 26.)

The Cy Fair ISD Board of Trustees is the final policymaker. Plaintiffs allege that the Board of Trustees' policymaking authority was delegated to Defendant Principal Strother. When viewed in the light most favorable to the Plaintiff, both Windfern's status as a "Campus of Choice" and the numerous occasions on which the unwritten policy was carried out at Windfern support a valid claim for delegation of policymaking authority.

---

[2] Indeed, both Plaintiffs and Defendant Cy Fair ISD take care to distinguish Windfern from other schools in the school district. In arguing that India was not technically "expelled," Defendant Cy Fair ISD says that even when Windfern was not planning to re-admit India because she sat for the Pledge, other schools in the district would have. The parties seem to agree that there could be different policies for Windfern, which supports Plaintiffs' argument that the policy in place was not the written policy. Alternatively, if Plaintiffs argue that the written policy was facially unconstitutional because of the parental permission provision, then the municipal liability analysis is unnecessary. It is not clear from the briefs whether that is Plaintiffs' argument.

At this stage, Plaintiffs have sufficiently alleged municipal liability.

### c. Due Process Claims

Plaintiffs allege a violation of India's due process rights under the Fifth and Fourteenth Amendments for expulsion from public school without notice and opportunity to be heard. Based on the facts alleged, the Court understands the due process claims to be brought against Defendants Cy Fair ISD, Principal Strother, and Superintendent Henry—but not the other individually-named Defendants for whom there are no or too few factual allegations related to due process.

First, Plaintiffs may allege due process claims for suspension or expulsion from public school on the basis of the Fourteenth Amendment, *Goss v. Lopez*, 419 U.S. 565 (1975), but not under the Fifth Amendment. "[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). The Fifth Amendment claim is dismissed in its entirety.

Second, Defendants Cy Fair ISD and Superintendent Henry argue with the facts alleged; they say that India was not actually expelled and that India had notice and an opportunity to be heard. These arguments fail. Defendants quibble with the word "expel" because India was ultimately allowed to return to Windfern and because, they say, she would have been able to attend another school in the Cy Fair ISD. Whether India could have attended a different school in the district is not a fact alleged in the operative complaint. When India was "kicked outta" school, it was for an indefinite period of time and she was not permitted to return for several days. (Doc. No. 24 at ¶ 26.) Suspensions also invoke some due process rights. *Goss*, 419 U.S. 565. Defendants suggest that being removed from class for sitting through the Pledge provided India with notice of her expulsion. This is complicated by India's allegations that the reasons she

was sent out of class and then removed from school were illegitimate and unconstitutional. Defendants further argue that the October 6 meeting was sufficient opportunity to be heard regarding the October 2 expulsion. But Plaintiffs allege numerous ways in which school administrators denied India and Kizzy Landry an opportunity to be heard. Defendants' version of the facts does not warrant dismissal of India's due process claim.

Third, Defendant Superintendent Henry argues that qualified immunity protects him from liability for any due process violations, and Plaintiffs' responsive briefing does not engage with this argument.[3] Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Where the allegations are "a supervisor's mere knowledge of his subordinate's discriminatory purpose," they are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In contrast, a superintendent who acts with deliberate indifference toward the constitutional rights of students may not be entitled to qualified immunity. *Guillory v. Thomas*, 355 Fed. App'x 837, 841-42 (5th Cir. 2009). In *Guillory*, the superintendent was deliberately indifferent to a student's constitutional right to bodily integrity where he knew of a high school band director's inappropriate sexual behavior, rehired the band director "despite contrary legal advice and without any restrictions, safeguards, or adequate supervision," and those supervisory failures resulted in the sexual abuse of a child. *Id*. at 840-41.

The Second Amended Complaint alleges the violation of inter-related clearly established

---

[3] Defendant Superintendent Henry believes that the only claims alleged against him were for due process violations. (Doc. No. 33 at 6.) This might be a misreading of the Second Amended Complaint, which could hold him liable for all claims. However, this misunderstanding is irrelevant as Defendant Superintendent Henry's qualified immunity argument applies with equal force to all of the claims and there are insufficient facts alleged against him.

rights: that India was forced to leave school without due process on the basis of her constitutionally-protected choice to abstain from standing and reciting the Pledge, as well as her race. But the facts specific to Defendant Superintendent Henry do not rise to deliberate indifference. Regrettably, it took him a few days to respond to the incidents that occurred at Windfern. But, unlike in *Guillory*, there are no allegations that he knew of or proximately caused India to be kicked out of school or denied her the right to remain seated for the Pledge prior to Kizzy Landry's first phone call to him on October 2. Defendant Superintendent Henry is entitled to qualified immunity.

### d. First Amendment Claims

Plaintiffs alleged that Defendants Principal Strother, Johnson, James, Fitt, and Walters disciplined and harassed India for sitting through the Pledge in violation of her First Amendment right to free speech, and that Defendant Cy Fair ISD is municipally liable. None of the individual Defendants moved to dismiss the First Amendment claims, and the Court has already found sufficient facts alleged for municipal liability at the pleading stage.

### e. Racial Discrimination Claims

Plaintiffs alleged that India was discriminated against on the basis of race in violation of Title VI, § 1985, and the Fourteenth Amendment equal protection clause by Defendants Principal Strother, Johnson, James, Fitt, Walters, and—through municipal liability—Cy Fair ISD.

First, individuals cannot be liable under Title VI. *Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009). The Title VI claims against Defendants Principal Strother, Superintendent Henry, Johnson, James, Fitt, and Walters are dismissed. Defendant Cy Fair ISD cannot be liable under Title VI for its employees' discrimination against a student

through vicarious liability. *Vouchides v. Houston Cmty. Coll. Sys.*, 2011 WL 4592057, at *6 (S.D. Tex. Sept. 30, 2011). A violation of Title VI must be based on intentional discrimination. *Price,* 329 F. App'x at 561. Plaintiffs did not allege facts that Defendant Cy Fair ISD intentionally discriminated against India on the basis of race. The Title VI claim against Defendant Cy Fair ISD is also dismissed.

Second, employees of a school board are all members of the same collective entity, and therefore cannot form a § 1985 conspiracy of two or more people. *Hilliard v. Ferguson*, 30 F.3d 649, 652 (5th Cir. 1994) (allegation that a superintendent conspired with a school board in violation of § 1985 to deprive plaintiff of his civil rights failed); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505 (6th Cir. 1991) (allegation that a superintendent, school administrator, and school board conspired together in violation of § 1985 to deprive plaintiff of his civil rights failed). The § 1985 claims against all Defendants are dismissed.

Third, Defendant Cy Fair ISD argues that India's equal protection claim fails because India did not allege sufficient facts to show the cause of her treatment was her race or that she was treated differently from white students. The Second Amended Complaint includes several race-specific allegations: (1) India and another African American student were sent out of class for sitting for the Pledge; (2) on a separate occasion, Defendant Fitt identified the other African American student in her comment about requiring India to stand for the Pledge; (3) Defendant Walters linked India's comment to the NFL, which has garnered media attention because of players kneeling for the Pledge in protest of treatment of African Americans; and (4) Defendant Principal Strother suggests writing about justice and African Americans being killed as an alternative to sitting for the Pledge. Both Defendant Walters' and Principal Strother's statements signal that they view India's choice to remain seated for the Pledge as one that is specifically

linked to India's race and the treatment of people of her race. At this stage, India has plausibly alleged an equal protection claim.

### f. Challenge to Texas Pledge Statute

Plaintiffs ask the Court to declare the Texas Pledge Statute unconstitutional. The Texas Pledge Statute requires, in part: "The board of trustees of each school district and the governing board of each open-enrollment charter school shall require students, once during each school day at each campus, to recite: (1) the pledge of allegiance to the United States flag," and (2) the pledge of allegiance to the state flag. Tex. Educ. Code Ann. § 25.082(b). "On written request from a student's parent or guardian, a school district or open-enrollment charter school shall excuse the student from reciting a pledge of allegiance." *Id.* at § 250.082(c).

First, Federal Rule of Civil Procedure 5.1 governs challenges to the constitutionality of a statute:

> A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if . . . (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; **and** (2) **serve the notice and paper . . . on the state attorney general** if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1(a) (emphasis added). Then the "court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." *Id.* at 51(b). The state attorney general will then have 60 days to intervene. *Id.* at 51(c). It is unclear from the filings in this case whether Plaintiffs have served the attorney general of Texas. The Court **ORDERS** Plaintiffs to demonstrate compliance with the Rule 5.1 service and notice requirement within 10 days; otherwise, the constitutional challenge to the Texas Pledge Statute will be dismissed.

Second, Defendant Cy Fair ISD assumes for the purposes of its Motion to Dismiss that

14

Plaintiffs have complied with Rule 5.1, and instead argues that Plaintiffs' challenge to the Texas Pledge Statute fails as a matter of law.

The Texas Pledge Statute has been unsuccessfully challenged on establishment clause grounds. *Croft v. Perry*, 624 F.3d 157, 165 (5th Cir. 2010). There is no analogous case that has determined the Texas Pledge Statute is not a violation of the Free Speech Clause. While the Supreme Court has held that students do not have to recite or stand for the Pledge, *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943), Defendant Cy Fair ISD points to three cases that might support the constitutionality of the Texas Pledge Statute. First, the Seventh Circuit has held that public schools in Illinois could lead the Pledge daily without violating the First Amendment so long as students were free not to participate. *Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437 (7th Cir. 1992). Under the Texas Pledge Statute, however, students are only free not to participate if they have advance, written permission from a parent. Second, the Fifth Circuit has considered the opt-out procedure for a requirement that students where a school uniform. The Fifth Circuit held that requiring parents to apply for a religious or philosophical exemption for their children by filling out a questionnaire did not violate the First Amendment. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 293-94 (5th Cir. 2001). While *Littlefield* did concern parental permission, religious objections to a uniform may differ from speech objections to the Pledge. Third, the Eleventh Circuit held that a Florida statute was unconstitutional to the extent that it required students to stand for the Pledge—but the unconstitutional part was severable—and to the extent that the statute required students to obtain parental permission to be excused from reciting the Pledge, it did not violate the First Amendment. *Frazier v. Winn*, 535 F.3d 1279 (11th Cir. 2008). The Eleventh Circuit provides guidance, but it does not control. In *Frazier*, the Eleventh Circuit treated the parental permission

part of the statute as a "parental-rights statute." *Id*. at 1284. Because India is not a minor, this case could involve a challenge to the parental permission provision that is distinguishable from *Littlefield* and *Frazier*.

To clarify: the Court distinguishes the aforementioned cases not as a determination—or even a signal—of the merits of Plaintiffs' challenge to the Texas Pledge Statute, but instead to show how the case may narrowly advance past the motion to dismiss stage if Plaintiffs have complied with the procedural rules.

## IV. CONCLUSION

The Court **GRANTS** Strother's Motion (Doc. No. 28), Henry's Motion (Doc. No. 33), and Johnson's Motion (Doc. No. 34). The Court **GRANTS IN PART** and **DENIES IN PART** Cy Fair ISD's Motion (Doc. No. 29). With respect to the claims that are dismissed, the Court dismisses them without leave to amend because amendment would be futile.

India may proceed with the following claims: a First Amendment speech claim against Defendants Cy Fair ISD, Principal Strother, Johnson, James, Fitt, and Walters; a Fourteenth Amendment due process claim against Defendants Cy Fair ISD and Principal Strother; and a Fourteenth Amendment equal protection claim against Defendants Cy Fair ISD, Principal Strother, Johnson, James, Fitt, and Walters. Additionally, if India and Kizzy Landry can show the Court, within 10 days, that their Texas Pledge Statute challenge complies with the service and notice requirements of Rule 5.1, then they may proceed with their claim challenging the Texas Pledge Statute.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 17th day of July, 2018.

                                               HON. KEITH P. ELLISON
                                               UNITED STATES DISTRICT JUDGE